IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| John C. Calhoun, Jr., ) | |
| ) | Civil Action No. 8:04-1682-HFF-BHH |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Jo Anne B. Barnhart, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) benefits on September 25, 2001, alleging that he became unable to work on August 1, 2001. The applications were denied initially and on

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

reconsideration by the Social Security Administration. On December 26, 2001, the plaintiff requested a hearing. The administrative law judge, before whom the plaintiff and his attorney appeared, considered the case *de novo*, and on November 18, 2002, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on March 23, 2004. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)   The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(1) of the Social Security Act and is insured for benefits through the date of this decision.
>
> (2)   The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> (3)   The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).
>
> (4)   These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> (5)   The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
>
> (6)   The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).
>
> (7)   The claimant has the following residual functional capacity: light work activity.
>
> (8)   The claimant is unable to perform any of his past relevant work (20 CFR §§ 404. 565 and 416.965).

(9) The claimant is a "younger individual between the ages of 45 and 49" (20 CFR §§ 404.1563 and 416.963).

(10) The claimant has "a limited education" (20 CFR §§ 404.1564 and 416.964).

(11) The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

(12) The claimant has the residual functional capacity to perform the full range of light work (20 CFR §§ 404.1567 and 416.967).

(13) Based on an exertional capacity for light work, and the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 202.17.

(14) The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(f) and 416.920(f)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in

3

substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a); *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a *prima facie* showing of disability by showing that he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence.

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **FACTS PRESENTED**

The plaintiff was 49 years old at the time of the ALJ's decision. He has a ninth-grade education and past relevant work as a heavy equipment operator, bouncer, carpenter, and dump truck driver (Tr. 57, 67). He alleges that he became disabled on July 1, 2001, due to back disorders and his status post an acute myocardial infarction.

The plaintiff underwent arthroscopic right knee surgery in September 1995. After undergoing physical therapy, the plaintiff's doctor, Dr. Wright S. Skinner, opined that there was "no way that [the plaintiff] can go back to any kind of manual labor" because of the degeneration of his knees. Dr. Skinner recommended vocational rehabilitation so that the plaintiff could be trained "to some type of sit down job status." Dr. Skinner stated that If that failed, the plaintiff would be disabled due to both knees being involved (Tr. 87-88).

In September and October 2000, the plaintiff was prescribed Paxil for depression and was noted to be tearful while being treated at Island Family Care in Pawleys Island, South Carolina (Tr. 185-86).

5

On July 10, 2000, the plaintiff presented to Dr. William Mills with complaints of neck, back, and shoulder pain. Examination revealed normal motor strength, no deformity of the spine, normal reflexes, normal gait, painless full range of motion of the hips, and myofascial pain. Dr. Mills' impression was non-radicular cervical and lumbar pain and possible peripheral neuropathy (Tr. 147). The plaintiff had a lumber MRI in July 26, 2000. Disc degeneration was noted at L1-2, L4-5, and L5-S1. Also, lateral recess stenosis was noted at L4-5 and central herniation at L5-S1 (Tr. 146). As a result of these findings, on December 14, 2000, the plaintiff underwent a total laminectomy (Tr. 137). Two weeks following surgery, the plaintiff was doing well with no leg pain, moderate lower back pain, and muscular spasms. On January 25, 2001, the plaintiff was doing very well. Dr. Mills opined that the plaintiff could return to work in a light duty status with no strenuous lifting (Tr. 138).

On February 9, 2001, Dr. Mills noted that the plaintiff was doing quite well and overall his symptoms were "very mild." Dr. Mills stated that the plaintiff could continue with light duty work and return to a more strenuous type of work in approximately four weeks with the use of a lumbar form corset. On April 23, 2001, Dr. Mills noted that the plaintiff had low back pain but no radicular pain. X-rays demonstrated good position of the pedicle screw fixation and no obvious lucencies around the interbody grafts. The plaintiff was given Vioxx and was fit with a "warm and form" corset (Tr. 134).

On July 1, 2001, the plaintiff presented to the East Cooper Regional Medical Center emergency room with complaints of chest pain (Tr. 116). An EKG showed acute inferior injury. He was stabilized and transferred to Roper Hospital (Tr. 128). Cardiac catheterization showed 90% stenosis in the midportion of a dominant circumflex artery between the second and third marginal branches. Dr. Bozman Reeves performed a balloon angioplasty and placed a stent that yielded a widely patent artery. The plaintiff was discharged from the hospital on July 5, 2001, with discharge diagnoses of acute non-Q wave

6

inferior myocardial infarction, coronary artery disease, hypertensive cardiovascular disease, diabetes, and hypercholesterolemia (Tr. 126-31).

The plaintiff had a follow-up appointment with Dr. Reeves on July 30, 2001. He reported he was gradually resuming activities and had been to the gym a few times to ride the bicycle. He reported no chest pain, shortness of breath, or palpitations. A treadmill stress test was performed for nine minutes and was stopped because of leg cramping and pain with no chest symptoms. Dr. Reeves stated that the plaintiff should maintain his present medications and symptom-limited activities. He further stated that the plaintiff could return to work (Tr. 168).

On August 27, 2001, the plaintiff had a follow-up appointment with Dr. Mills. The plaintiff complained of "quite a bit of lower back pain." Examination revealed no radicular pain, negative straight leg testing, and ability to forward bend with fingertips at the ankle level. X-rays demonstrated a solid fusion at both levels and no evidence of hardware failure or loosening. Dr. Mills ordered a test to "rule out the possibility of a low grade deep infection." He noted that the plaintiff was on an out-of-work status (Tr. 133).

On September 12, 2001, the plaintiff had a follow-up appointment with Dr. Reeves. He reported that his back and leg problems were fairly well controlled on medication, his exercise capacity had improved, he had no specific cardiovascular complaints, and he had good blood pressure control. Examination revealed normal heart sounds and rate. Dr. Reeves determined that the plaintiff did not have any medication side effects and opined that the plaintiff had a satisfactory convalescence from his prior cardiac event (Tr. 167).

A state agency medical consultant reviewed the plaintiff's records and completed a physical residual functional capacity assessment on October 25, 2001. The consultant determined that the plaintiff could perform the exertional requirements of light work (Tr. 158-65).

The plaintiff returned for a follow-up appointment with Dr. Reeves on July 17, 2002. He reported shortness of breath and that he had stopped all exercise and was not doing weights. Dr. Reeves opined that the plaintiff's heart condition was stable with no symptoms of recurrent ischemia or congestive heart failure and that his blood pressure was well controlled (Tr. 208).

At the administrative hearing on August 20, 2002, the plaintiff testified that he was able to sit for 30 minutes, he could climb a flight of stairs, and that he had to rest when walking long distances (Tr. 245-46). He also testified that he spent most of his day reclined watching television (Tr. 248). He testified that he was able to do some housework, mow his lawn, and go to church (Tr. 248-52). The plaintiff further testified that his back pain was becoming worse every day (Tr. 253).

The plaintiff submitted records from the South Carolina Vocational Rehabilitation Department to the Appeals Council from July and August 2003. The records indicated that the plaintiff was able to tolerate a full day of activity at the sedentary to light work level and recommended a regular exercise program (Tr. 230-31). The plaintiff participated in physical therapy in July and August 2003. The plaintiff was noted to physically tolerate a full day of activity for the four-week evaluation period at the sedentary to light work level; however it was noted that part-time work "would be more appropriate initially due to client's increased pain with increased activity." It was further noted that the plaintiff would need accommodations for no kneeling, crouching, stooping, climbing, or crawling activities, and that he would benefit from changing positions frequently between sitting, standing, and walking (Tr. 235). An MRI in October 2003 demonstrated posterior disc herniation at C4-5, which was compressing the ventral spinal cord, along with large diffuse posterior disc bulges at C5-6 and C6-7, which abutted the ventral cord at those levels (Tr. 238).

**DISCUSSION**

In his decision dated November 18, 2002, the ALJ found that the plaintiff's allegations regarding his limitations were not totally credible and that he retained the residual functional capacity ("RFC") to perform light work. At step four of the evaluation process, the ALJ found that the plaintiff's RFC prevented him from performing his past relevant work, and at step five, using the Medical-Vocational Rules (the "Grids"), the ALJ determined that the plaintiff was not disabled (Tr. 19-20).

The plaintiff alleges that the ALJ erred by 1) failing to properly assess the plaintiff's credibility by giving too much weight to the plaintiff's daily activities; 2) failing to properly determine the plaintiff's RFC; 3) failing to consider the entire opinion of treating physicians; 4) failing to consider the combined effect of the plaintiff's impairments; 5) failing to evaluate the ability of the plaintiff to use his upper extremities; and 6) using the grids to satisfy his burden of proving the existence of occupations in the national economy that fit the plaintiff's RFC.

Within several weeks following both his laminectomy and angioplasty, it was noted by the plaintiff's doctors that he could return to work (Tr. 129, 134, 138, 168). Examinations and diagnostic testing subsequent to the plaintiff's surgeries revealed that he was doing quite well, could return to work, had negative straight leg testing and no radicular pain, his exercise capacity had improved, and his heart condition was stable with no symptoms of recurrent ischemia or congestive heart failure (Tr. 88, 129, 134, 138, 167, 168, 208). Further, as noted by the defendant, it is significant that the plaintiff's doctors never placed any substantial restrictions on his daily activities, nor did they ever opine that he was totally and permanently disabled. *See Lee v. Sullivan*, 945 F.2d 687, 693 (4th Cir. 1991) (finding that no physician opined the plaintiff was totally and permanently disabled supported a finding of no disability). Also supporting the ALJ's finding, is the report of a State agency

medical consultant who determined that the plaintiff could perform the minimal exertional requirements of light work (Tr. 158-65).

The ALJ properly determined that the plaintiff's testimony was "less than credible" (Tr. 17). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§404.1529 and 416.929. Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 287 F.3d 903, 909-910 (10th Cir. 2002) (citing *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir.2000)). As noted by the defendant, the objective medical evidence indicates that the plaintiff was doing quite well with only mild symptoms within three weeks of his back surgery, and he "had a satisfactory convalescence from his prior cardiac event" within a couple of months of the angioplasty. Further, while the plaintiff claimed he was disabled and testified as to knee, back, foot, and hand pain, the evidence shows that he was able to ride in his boat, mow his lawn, do housework, ride an exercise bike, and lift weights (Tr. 168, 248-50). None of the plaintiff's physicians placed any significant restrictions on his daily activities, and while the plaintiff testified to shooting pain in his hands, there is no record of any medical treatment for hand problems (Tr. 249). Importantly, the plaintiff was not taking any significant pain medication (Tr. 85).

The plaintiff contends that the ALJ gave too much consideration to his ability to perform daily activities (pl. brief 4-5). While evidence of daily activities may not be determinative on the issue of disability, in conjunction with the other evidence of record, it may provide significant support for the conclusion that the plaintiff's complaints are not fully credible. *See Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996) (noting the factors to be considered in the credibility evaluation process, including evaluation of the plaintiff's activities). The court finds that the ALJ did not err in this regard.

10

The plaintiff argues that the ALJ erred in finding that he could perform light and sedentary work because he could not stoop and needed a sit/stand option (pl. brief 4-5). The defendant acknowledged that Julie Jackman, a physical therapist who worked with the plaintiff through the South Carolina Vocational Rehabilitation Center from July 6 to August 1, 2003, opined that the plaintiff should not stoop and needed to change positions frequently (Tr. 235) (def. brief 11).  However, the defendant maintains that the opinion of the physical therapist is inconsistent with the medical evidence of record that indicates that no significant limitations were ever placed on the plaintiff's activities by his physicians and that the plaintiff was capable of light work.  *See* 20 C.F.R. §404.1513 (a therapist is not an acceptable medical source, but is another source from which we may use evidence to show the severity of an impairment).  This court agrees.

The plaintiff next argues that the ALJ erred in choosing "to cite only selective portions of the treating physicians' records while ignoring other portions of the [plaintiff's] medical history" (pl. brief 4).  Specifically, the plaintiff argues that the ALJ should have considered the "pre-existing medical records" that noted degeneration in the plaintiff's left knee and notations regarding prescriptions for anxiety and depression and should have evaluated the plaintiff's ability to use his upper extremities (pl. brief 4-5; *see* Tr. 87, 185-86). As noted above, the plaintiff was prescribed Paxil for depression in September 2000 (Tr. 185-86). Further, at the administrative hearing, the plaintiff testified to being depressed and having suicidal thoughts (Tr. 251-52).  With regard to his knee problems, the evidence shows that the plaintiff underwent arthroscopic right knee surgery in September 1995 (Tr. 88). After undergoing physical therapy, the plaintiff's doctor, Dr. Skinner, opined that there was "no way that [the plaintiff] can go back to any kind of manual labor" because of the degeneration of both of the plaintiff's knees.  Dr. Skinner recommended vocational rehabilitation so that the plaintiff could be trained "to some type of sit down job status."  If that failed, Dr. Skinner stated that the plaintiff would be disabled due to both knees being

11

involved (Tr. 87). The ALJ did not address the plaintiff's alleged left knee degeneration or depression in his consideration of the plaintiff's impairments, nor did the defendant address this argument in its brief.

With regard to the plaintiff's ability to use his upper extremities, on July 10, 2000, the plaintiff presented to Dr. William Mills with complaints of neck, back, and shoulder pain. Examination revealed normal motor strength, no deformity of the spine, normal reflexes, normal gait, painless full range of motion of the hips, and myofascial pain. Dr. Mills' impression was non-radicular cervical and lumbar pain and possible peripheral neuropathy (Tr. 147). During his occupational therapy in July 2003, the plaintiff complained of pain and discomfort in both shoulders with flexion and abduction. Functional capacity ratings for the right upper extremity were frequently for reaching handling, fingering and occasionally for feeling. Functional capacity ratings for the left upper extremity were frequently for reaching and constantly for handling, fingering, and feeling. The therapist noted that limited back mobility and reports of discomfort after sitting and standing for more than an hour was the rational for the rating (Tr. 232).

This court agrees with the plaintiff that the ALJ failed to consider the combined effect of all the plaintiff's impairments in determining the plaintiff's RFC. In a disability case, the combined effect of all the claimant's impairments must be considered without regard to whether any such impairment if considered separately would be sufficiently disabling. Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. *Id*. The cumulative or synergistic effect that the various impairments have on the claimant's ability to work must be analyzed. *DeLoache v.*

*Heckler*, 715 F.2d 148, 150 (4th Cir. 1983). The regulations require that if a severe impairment exists (in this case, the ALJ determined that the plaintiff suffered from the severe impairments of a back disorder and status post an acute myocardial infarction) all medically determinable impairments must be considered in the remaining steps of the sequential analysis. 20 C.F.R. §§404.1523 and 416.923.

Based upon the foregoing, this court recommends that the decision of the Commissioner be reversed and the matter remanded for further consideration of the evidence regarding the degeneration of the plaintiff's knees, his ability to use his upper extremities, and his allegation of depression. The ALJ should consider the combined effect of all the plaintiff's impairments in determining the plaintiff's residual functional capacity.

The plaintiff argues that the ALJ erred in using the grids to satisfy his burden of proving the existence of occupations in the national economy that fit the plaintiff's RFC (pl. brief 5). Where a claimant has no nonexertional impairments that prevent him from performing the full range of work at a given exertional level, the ALJ may rely on the grids to satisfy his burden of proof. *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987). It appears to this court that the plaintiff does have nonexertional limitations. Accordingly, upon remand, the ALJ should be directed to take vocational testimony.

## CONCLUSION AND RECOMMENDATION

Therefore, it is recommended that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §§405(g) and 1383(c)(3), with a remand of the cause to the Commissioner for further proceedings consistent with this opinion. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

                                        s/Bruce H. Hendricks
                                        United States Magistrate Judge

July 19, 2005

Greenville, South Carolina